Thank you, your honors, and may it please the court, my name is Michael Patrick McCarg, Sr. from Kauffman Dulwich, on behalf of Appellant Constellis. This case was a very simple case when it was tried, and it is an even simpler case now that it is before this panel, as we have stripped it down to just a single issue. The rarely managerial employee within the National Labor Relations Act. It is a judicially created doctrine designed to separate the problem that labor management relations has of the divided or conflicted loyalty problem between those individuals whose interests are predominantly aligned with management and those individuals whose interests are aligned with the workforce and employees. We need to make sure that those managerial employees in the operation and perfection of their job duties are free from conflict of interest in performing and executing those duties, in this case in the interest of the security of the nation. It is not an embellishment to say that this case has national security implications. So is the issue here that there was a wrong definition or is it whether or not there is substantial evidence to support the lower court decision? Your Honor, I don't believe that there is substantial evidence to support the lower court's definition, and that is the first problem. But if we disagreed with that and thought there was substantial evidence, would the case be over then? If you found that Judge Amchan's decision was supported by substantial evidence, yeah, I believe the case would be over at that point. So which of the board's specific factual findings are you challenging is unsupported by substantial evidence? Again, our primary argument is that Judge Amchan chose, for reasons that are fairly obvious, the Wolf nuclear operating case. I'm not asking about what legal test. I'm asking which factual findings are clearly erroneous. Or not supported by substantial evidence, I'm sorry. The finding that the ALJ, he discounted the independent judgment exercised by the individual instructors. Also that he found, but didn't rely on, the fact that Macri and the other instructors did in fact exercise their professional judgment to remove students from class and remove students from training. Those all may be factors that would potentially show substantial evidence in favor of your client. But it seemed like to me that there were a number of other factual determinations that could be read as substantial evidence in favor of the board. And it's not up to us to re-weigh the evidence. That's correct, Your Honor. But the board itself, the board, as distinguished from the administrative law judge, did not engage in the kind of in-depth analysis or any analysis whatsoever of the judge's finding. They took the very critical cutaway statement that the ALJ, if I were to find otherwise, we would leave them unprotected to petition an employer to ameliorate dangerous working conditions. The board didn't buy that part, did it? Well, they said they didn't, but they didn't do anything to prove they actually. They didn't adopt it. How is that relevant? Other than saying we're not relying on it because they knew it would be troublesome here today, they didn't actually say anything to demonstrate that there was a thought process disavowing that statement. They put in a throwaway statement out of desperation. I don't think that they demonstrated any serious disabusement of that dangerous So they weren't disrespectful enough to the ALJ is the idea? I don't mean to say that, Your Honor. I'm saying they weren't analytical enough to the populace at large to explain what it was they were doing. Can I take a 20,000-step overview back, which just strikes me as odd about the argument you're making here? So as I understand, the whole thing that gives rise to this entire thing is that Macri and some of his fellow instructors think there's a problem, a problem in an area that they work in and that they train people in, right? These ricocheting bullets thing, right? And rather than just going and doing what they think needs to be done, they have to lobby people that they're under in the chain of command in order to fix something that directly involves their own workplace? Doesn't that suggest pretty strongly that they are not managers? Because managers, when they see something that's dangerous at their own workplace, just do it. They don't have to try to convince someone above them in the hierarchy to do it, normally speaking, right? It just feels profoundly weird to say that the entire dispute is about these guys who think there's a problem in their workplace within the scope of their area of responsibility. And when they see a problem, they have to convince someone else to do something about it, which to me suggests pretty strongly that these guys aren't managers. Well, I think that test, Your Honor, I understand, I think I understand what you're saying. They just don't feel like managers. The facts of this case itself to me sort of illustrate why these guys don't feel like managers. Well, again, Your Honor, I mean, I'm here because I think it's dangerous to reduce this to what the administrative law judge deemed the layman's test. No, I agree. No, I take your point. But I'm guessing you're saying that this decision is not just wrong, it is so wrong that we should, notwithstanding a fair amount of deference that's required to the agency here, even post-Loeb or Bright, at least on factual issues, that we should overturn the agency's judgment in a case where the agency's judgment strikes me as, at minimum, intuitively plausible. Again, if you put it in a vacuum and say, well, they complained about a serious problem, but the tests have not been, not since Bell Aerospace, the test is not requiring them to participate in full-on managerial deliberations. Okay, great. So let's take Yeshiva University, because it strikes me that a bunch of your argument in this case is extremely hard to square with what the Supreme Court said in Yeshiva, because they said, this is the footnote 31, which I'm sure you're aware of what it says, but it says that professors are not excluded from the NLRA merely because they determine the content of their courses, evaluate their students, and supervise their own research. There has to be something more to make someone a manager, but it seems like a lot of what you're saying are the things that the Supreme Court in Yeshiva says is not enough to make you a manager. Well, Yeshiva correctly points out that there has to be something more. We think that land yap is demonstrated in the training on sexual harassment, which we would all agree is a critical management function that falls to the instructors. And again, I keep retreating, I will keep retreating to my position. I think there is some... They may be instructing on that and any number of different firearms protocols, but aren't they given all that by their supervising managers? The initial instructions come from, typically in my experience, are passed through the employing agency. For instance, the individuals who keep you safe in this building and who put me through security today are employed by a competitor of Constellus. And in the past, in this very building, those U.S. Marshals, Deputy U.S. Marshals, have been Constellus employees. The training in that case initiates with the Marshal service. And then when it is given to the firearms instructor... Right, so your folks are told what they're supposed to do. Initially. Then the individuals who perform the firearms instruction take their skill and knowledge and conform it to their experience, their training, what they've seen in the real world. Whether they were a level one operator in Afghanistan... Wouldn't that be true of nearly every teacher in any setting? No, not necessarily. Because I think in the case of Wolf Creek, for instance, the National Regulatory Commission is so hands on. And as was explained, had 28 very precise points that need to be met for work within a nuclear facility. Conditions that don't exist anywhere else in the world, frankly. And there are safety commissions that are so germane only to a nuclear facility that I think that is just a poor analogy. I understand that you could say that it's all instructors... Tell us how this is different just conceptually. I mean, I know the subject matter is different, but if you're a high school history teacher, you have certain requirements that you have to teach under the standards of learning and other dictates. But how you do that in the classroom is going to be... That's the teacher's prerogative. They're not managerial employees. How are your folks different? Teaching history, I would be hard pressed to find a scenario where teaching history was the desired outcome of the enterprise. Whereas here, Constellas is teaching people... I don't know that history people might disagree with you on that. Well, academics would be prone to do so. But the firearms safety to relegate it to something that is mere common sense is reckless. I'm glad it is not in the real world mere common sense. I think we're all tired of turning on the TV and seeing a five-year-old shooting a seven-year-old, whatever. But this comes back to the national security thing that you mentioned in the brief that you alluded to earlier. That's what they're teaching is super duper duper important. And let's posit that I'll spot you that it's super duper important that people who are going to walk around with firearms are adequately trained and how to use them and when to use them. But I don't see how that maps on to the question of whether they're managers or not. The importance of what they're teaching has anything to do with whether they're a manager. But it keeps popping up at various points throughout your argument, so I just wanted to surface it and give you a chance to... If you think it is relevant somehow, I'd like you to try to explain to me why is the importance of the subject being taught relevant to whether someone's a manager? Because executing the duties of Constellates and its subsidiaries depends upon the proper use and safety of firearms for the safety of the individuals who are within the purview of their coverage on a day-to-day basis or, God forbid, in those very rare circumstances where there's an emergency. But isn't that just an issue of the qualifications of the employees and not whether or not they exercise managerial obligations or duties? You get hired because of your qualifications. Employment is presumably maintained because of your qualifications. That's correct. I agree with that statement. What I was going to say, though, is that you're trying to make sure that they're learning. They introduced the seared gun. They introduced the blue gun. They drafted the entire curriculum for Maryland wear and carry. These are the interests of the employer. D.C. Special Police Officer. People in this room know that doesn't mean a security guard. A D.C. Special Police Officer is a D.C. police officer, a sworn D.C. cop. So they're developing the training that helps Constellates' business people sell more services and lets them know that when they want Constellates to bring out the level one operator types that it is Constellates that has the instructors in the interests of the company to make those training decisions on the fly. They're presumably always acting in the interests of their company. That doesn't make them managers. Of course not. Of course not. Back to the divided loyalty problem. This doesn't seem like an exception that would follow the rule. What if you had a labor organization then that negotiated a collective bargaining agreement that prevented firearms instructors from disqualifying people from training and saying that needs to be a decision that's made at another level? I'm out of time here. If you want to finish your answer, go ahead. Thank you. So I think conversely if you leave them in where they have to identify these violations and decide who can move on to a federal contract and who cannot, that to me is the pinnacle of a management decision because they are deciding who gets to wear a gun. And that to me points back to the divided loyalty problem. All right. Thank you very much. You've got some rebuttal time. Mr. Cantor, we'll be glad to hear from you. May it please the Court, Jared Cantor on behalf of the National Labor Relations Board. Your Honors, obviously much of this case at this point is not in dispute, including importantly that Michael Macri engaged in protected concerted activity and that the company essentially now admits it fired him because of that. Can I ask you about another thing that doesn't really seem to be in dispute? Your brief says that we defer to the Board about the meaning of the statute. Is that really true after Loper-Bright? Your Honor, obviously we certainly give them lots of deference about findings of fact and maybe application of law to fact, but do you have some argument about how this statute is like a meme from Loper-Bright? Obviously we did not brief that at this point. The Board certainly has taken the position in other cases, depending on the nature of that case and what the Board did in that case, whether the Board still is the expert in construing the statute. Sure. We could get skid more deference, but I don't want to derail your whole argument. What would possibly be the argument that this statute is exempt from Loper-Bright? Well, Your Honor, a lot of existing Supreme Court cases. Sure. It turns out that Loper-Bright disrupted a whole bunch of laws. I imagine the BIA was a little surprised and unhappy to learn that apparently we don't defer to the BIA anymore about the meaning of the Immigration and Nationality Act, despite there were a whole lot of Supreme Court cases saying we owe the BIA tons of deference about what the statute means, and yet here we are. Well, Your Honor, I think the point I would make is that Loper-Bright was very clear that all prior cases are statutory stare decisis. The NLRA has almost 90 years of circuit and Supreme Court precedent. Sure. So to the extent that the Board said things in the past that courts deferred to, we still do those things. Yes. But I don't know what the argument for going forward that we owe the Board any deference at all about legal questions is. Well, Your Honor, I think then the Board is... Well, sorry, any difference other than our skid more, the sort of lower level power to persuade. And look, the Board is very expert, and maybe that will cash out for them in ways that tend to go better for them than for other parts of the government. But I don't know what the possible argument that the Board is just immune to Loper-Bright is. Your Honor, the Board has, I hesitate to say immune. I don't think the Board would say... Exempt? Not covered by? I don't know if it would be a matter of not covered by. I think it would very much depend on a specific Board decision, presumably, Your Honor, as far as referring to maybe some new decision, a groundbreaking decision. Yes, the Board encounters a new issue, and they do their best. And I don't mean to in any way besmirch that they do their best to get the best answer they can. And in a pre-Loper-Bright world, courts would give a lot of deference to that. And in a post-Loper-Bright world, I don't know how courts give any deference to that, beyond our skid more deference. Well, that would be a case of statutory interpretation. Loper-Bright makes clear that agencies still get deference for policymaking. So it would very much depend on a future case. I guess you don't need us to agree that the Board gets some sort of Loper-Bright exemption for you to win this case, right? No, Your Honor. We are, as counsel I think acknowledge, we are dealing with Supreme Court decisions, yeshiva and bell aerospace, that basically have sanctioned definitions or guideposts. Again, this is a judicially approved exclusion from the acts protections. So we have the language from yeshiva, we have the language from bell aerospace, and, of course, Board decisions before and after that on the facts. And, of course, that's the point I would want to make. So this case is turning on whether, as the Board found, the company failed to prove its defense that Michael Macri was excluded from the act. And that's a question of substantial evidence. So if there's substantial evidence to support the Board's decision, as I ask opposing counsel, that ends this case. Yes, Your Honor, that is the standard of review. Garden Trucking, a post-Loper decision from this Court, articulated it, you know, that the Court reviews the NLRB factual findings and application of undisputed law to the facts under the substantial evidence standard. Substantial evidence means more than a scintilla of evidence, but less than a preponderance. And that's the Court's decision in Pactel. And I think there seems to be some agreement here that, you know, we should talk about the actual evidence in the case if the Court is interested. My counsel, my brother at the bar, seems very knowledgeable about guards and where his client provides them. You know, I certainly am very knowledgeable about the record in this specific case and the factual findings made here. And if the Court is interested, I am more than happy to go through the Board's factual findings and, you know, the evidence that supports them, as well as the evidence that detracted from the company's argument or its defense. Why don't you give us an abridged Reader's Digest version of why there's substantial evidence here, so we'll have it. Sure, Your Honor. Some pieces that really jump out to me in the record because they pertain specifically to Michael Macri. When you're on the range as an instructor and you're teaching a course, the company has these range cards. They're in the record. They sort of look like note cards that you're supposed to follow. And one day, Michael Macri departed from the order, and he was warned by his team leader, Kellogg, that those have to be followed in the sequence that they are created, that the use of an audible must never occur without prior approval from the management team. Another instance with Michael Macri. In the classroom setting, a student smells of alcohol. He files the spot report. The company decides to send that student home. The student comes back a month later, smells of alcohol again. Michael Macri documents it in a report. The company sends him home. He shows up a couple more months later. Again, he's documenting. He's not taking any action himself. Another incident I thought was very interesting. Michael Macri punished a group of students because they were late coming to class. The training manager, James, warned him that Michael Macri, as an instructor, was not allowed to impose any punishment of any kind for any reason. His only recourse was to generate a spot report, submit it for review, and management would determine if there would be any further action. That's the type of evidence that I think supports the board's finding here that Michael Macri was an employee, which again, essentially is the default position. He was working for this company for compensation. The question really is, could the company carry its burden of showing that he was managerial? And on this record, they fell very far short. If there are no further questions, the board rests on its brief. Thank you very much. Thank you, Your Honor. All right. Mr. McCard, you've got some rebuttal time left. Thank you, Your Honor. Briefly, Your Honor, I just would want to respond to the three substantive points that my colleague made. First, I think it's very dangerous in this case. I think, as I mentioned earlier, there were some dangerous things that happened in the analysis in this case, and I think it would be dangerous here to read anything into this idea of, oh, we argued in half of our brief that there was this protected concerted activity. That isn't even the question. The question is, if he's a managerial employee, there could have been no protected concerted activity. That's putting the cart so far in front of the horse that it's almost like checking the transmission on a horse. And secondly, the examples cited by counsel, the alcohol spot reports and the late declass, as litigated demonstrated that Constellus guarded its outside of the classroom conduct and differentiated it from the very important job function that it expected from its firearms instructors. It did not want them policing things outside of the classroom, but rather focusing on the critical challenge of getting everybody to meet the firearms standards. With that, there's no questions.
judges: G. Steven Agee, Toby J. Heytens, Nicole G. Berner